[No. B013120. Second Dist., Div. Four. Sept. 19, 1985.]

LASKY, HAAS, COHLER & MUNTER et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
CLAIRE E. GETTY et al., Real Parties in Interest.

**COUNSEL**

Moses Lasky, Charles B. Cohler, Thomas E. Woodhouse, in pro. per., Richard Haas and Lasky, Haas, Cohler & Munter for Petitioners.

No appearance for Respondent.

Latham & Watkins, Philip F. Belleville, Morris A. Thurston, Michael R. Whalen, Ursula H. Hyman, Brian L. Becker, Overton, Lyman & Price, Edmond R. Davis, John A. Payne, Jr., Thomas M. McMahon, Pamela M. Heberton, Butler, Dan, Allis & Reback, James G. Butler, Robert C. Reback, Hufstedler, Miller, Carlson & Beardsley, Joseph L. Wyatt, Jr., and Dennis M. Perluss for Real Parties in Interest.

**OPINION**

**WOODS, P. J.**—The question to be determined in this proceeding in mandate is whether an attorney's "impressions, conclusions, opinions or legal research or theories," generated in the process of assisting a client to act as a trustee but never communicated to the client, are privileged from discovery by trust beneficiaries who seek to remove the trustee for mismanagement.

The facts material to determination of the issues are relatively simple and not in dispute.

On November 14, 1983, Seth M. Hufstedler as guardian ad litem for Tara Gabriel Galaxy Gramaphone Getty (Tara), a beneficiary of the declaration of trust of Sarah C. Getty dated December 31, 1934 (the Trust), filed a petition in Los Angeles Superior Court. On March 12, 1984, an amended petition was filed. The petition seeks, inter alia, instructions as to whether the sole remaining successor trustee Gordon Peter Getty (Gordon), has au-

thority to administer the trust; the petition also seeks the removal of Gordon for mismanagement of the trust corpus.

The petition alleges that Tara is a beneficiary of the Trust with a future interest in income and principal. The alleged intent of the trustors, Sarah C. Getty and J. Paul Getty, was to provide for management of the trust by two individual trustees and one corporate trustee on the basis of "majority rule." The trustors intended to manage the corpus in a conservative manner to preserve the family's controlling interest in Getty Oil Company and thus provide long-term income for the descendants of J. Paul Getty. The original trustee, J. Paul Getty, died in 1976. Gordon became the sole acting successor trustee when the nominated corporate successor trustee refused and the other nominated and acting individual successor trustee died.

While acting as the sole successor trustee, Gordon allegedly solicited offers from large corporations to purchase the trust's controlling shares in Getty Oil Company. Gordon eventually effected a sale to Texaco Oil Company in 1983 for approximately $4 billion dollars and elected payment in cash. The beneficiaries of the trust, having future interest in the corpus income and principal, claim that the sale violated the intent of the trust to retain the Getty Oil Company business. They assert that Gordon effected the sale to serve his interests, as a current Trust income beneficiary, to the prejudice of beneficiaries with future interests.

Gordon filed a response to Tara's petition contending that the Trust allows for a sole successor trustee to manage the Trust and disputing the propriety of appointing a co-trustee.

On June 8, 1984, other beneficiaries of the Trust, Claire E. Getty, Caroline M. Getty and Anne Getty Earhart, (Claire, Caroline and Anne, respectively) filed a petition seeking to remove and surcharge Gordon as trustee and to have a corporate trustee appointed. This petition alleged: (1) that Gordon exposed Getty Oil Company to takeover bids by large oil companies due to his solicitation of purchase offers; (2) that Gordon generated hostility between himself and the management of Getty Oil Company which resulted in less effective management and vulnerability to hostile takeover bids; (3) that Gordon disclosed information confidential to Getty Oil Company to competitors of Getty Oil Company, and (4) that Gordon breached his fiduciary duty to the Trust beneficiaries when he failed to inform them of his plan to sell the Trust's interest in Getty Oil Company so that they could not prevent such a sale.

In his response to the second petition, Gordon avers that solicitations by large corporations to purchase the Trust's shares were not precipitated by him but, rather, by the very filing of Tara's petition on November 14, 1983.

In the course of discovery concerning the allegations of mismanagement by Gordon, the trust beneficiaries sought discovery of all writings and discussions generated by Gordon's counsel (petitioners Lasky, Haas, Cohler & Munter and Thomas E. Woodhouse—hereafter the Lasky firm) concerning Gordon's activities as trustee with regard to the trustee's sale of Getty Oil Company stock to Texaco, Inc., and with regard to the alleged prior proposed sales to other specified entities.

The Lasky firm produced and disclosed all its actual written and oral communications to Gordon concerning material trust business, but refuses to disclose writings or oral discussions that it terms its "internal and private uncommunicated work-product" in that regard. The Lasky firm contends that such work product (consisting of its "impressions, conclusions, opinions, or legal research and theories") which was never communicated or produced to its client, the trustee, is absolutely protected from discovery by the language of section 2016, subdivision (b) of the Code of Civil Procedure. Since the client trustee has no right under law to compel disclosure of such writings and oral discussions, the trust beneficiaries have no such right either.

The beneficiaries moved to compel production of documents and answers to deposition interrogatories concerning the "uncommunicated" attorney work product. The beneficiaries contend that the activities of Gordon's counsel are potentially material to determination of the issue of whether Gordon considered soliciting or did solicit a sale of the Trust's securities before or after November 14, 1983.

After extensive briefing and argument, it was determined by the superior court that a client has the right to require his counsel's disclosure of previously uncommunicated attorney work product and that, because the trustee has a fiduciary duty to disclose all "obtainable," pertinent information concerning trust management to the beneficiaries, the uncommunicated work product of the trustee's counsel is discoverable by the adversarial beneficiaries. The work product ordered produced or disclosed includes all counsel's "impressions, conclusions, opinions, legal research and theories relating to work that they have undertaken on the trustee's behalf; . . . in his capacity as trustee, including conversations or communications between one another and memoranda produced and research prepared in connection with Trust matters." However, the beneficiaries' right to discovery of work product does not extend to any work done by the trustee's counsel in connection with defending Gordon against the charges made against him by the beneficiaries in the underlying proceedings.

The resulting petition for mandate was initially summarily denied by this court. The Supreme Court granted hearing and ordered this proceeding re-transferred to this court with directions to issue an alternative writ. The writ issued.

## DISCUSSION

Whether trust beneficiaries who are litigation adversaries of their trustee have a right to compel discovery of the uncommunicated work product of the attorneys counseling the trustee in administration of the trust is a question of first impression.

Analysis of this ultimate question requires preliminary resolution of the question of who holds the work-product privilege. This is necessary for two purposes: (1) to determine whether a cognizable assertion of the privilege was made in the underlying proceedings and (2) to facilitate analysis of the beneficiaries' contention that they may nevertheless discover the uncommunicated work product (a) because the trustee client has a legal right of access to the privileged work product and must obtain and disclose that material to them under his fiduciary duty as trustee or (b) because the beneficiaries have a direct right of access as secondary "clients."

The beneficiaries successfully contended below that, as between client and attorney, the client is the holder of the work product privilege or, alternatively, that the client "owns" his attorney's work product and is not affected by the privilege. Accordingly, the client trustee must compel his attorneys to produce to him all uncommunicated work product in satisfaction of the trustee's fiduciary duty to provide full disclosure to the beneficiaries.

The petitioning attorneys contend that the attorney is the exclusive holder of the work product privilege in all circumstances and that the attorney may resist discovery efforts by even his client.

The lines of cases relied upon by the beneficiaries and the petitioners, respectively, represent an ostensible split in authority as to who is the sole holder of the work product privilege or who "owns" the work product. However, for the reasons discussed hereafter, we conclude that the cases relied upon by petitioners correctly hold that the privilege is held exclusively by the attorney in all circumstances and that, specifically, there is no exception to this rule as between attorney and client.

I

*The Attorney Is the Exclusive Holder of the Work Product Privilege.*

The attorney work product privilege was statutorily established in California by the 1963 amendment to section 2016 of the Code of Civil Procedure which added the following second paragraph to subdivision (b): "The work product of an attorney shall not be discoverable unless the court determines that denial of discovery will unfairly prejudice the party seeking discovery in preparing his claim or defense or will result in an injustice, and any *writing* that reflects an attorney's impressions, conclusions, opinions, or legal research or theories *shall not be discoverable under any circumstances.*" (Italics added.)

■ The privilege recognizes what is termed an "absolute" privilege as to *writings* containing the attorney's impressions, opinions, legal research and theories and recognizes a "qualified" privilege as to all written materials and oral information not reflecting the attorney's legal thoughts. (*Fellows* v. *Superior Court* (1980) 108 Cal.App.3d 55, 68 [166 Cal.Rptr. 274].)

By the same 1963 amendment, the provisions of subdivision (h)[1] were added to section 2016. Subdivision (h) states the purposes of the privilege as follows: "(h) It is the policy of this state (i) to preserve the rights of attorneys to prepare cases for trial with that degree of privacy necessary to encourage them to prepare their cases thoroughly and to investigate not only the favorable but the unfavorable aspects of such cases and (ii) to prevent an attorney from taking undue advantage of his adversary's industry or efforts."

■ Section 2016 is silent as to who is the holder of the privilege. However, cases have construed the language of the statutory privilege in light of its statutorily expressed purposes to provide that the attorney generating the work product is the exclusive holder of the privilege. (*Rumac, Inc.* v. *Bottomley* (1983) 143 Cal.App.3d 810 [192 Cal.Rptr. 104] [hg. den.]; *Fellows* v. *Superior Court, supra,* 108 Cal.App.3d 55, 64, [hg. den.]; *Lohman* v. *Superior Court* (1978) 81 Cal.App.3d 90, 101 [146 Cal.Rptr. 171] [hg. den.]; *American Mut. Ins. Co.* v. *Superior Court* (1974) 38 Cal.App.3d 579, 594 [113 Cal.Rptr. 561] [hg. den.]; *Kerns Const. Co.* v. *Superior Court* (1968) 266 Cal.App.2d 405, 411 [72 Cal.Rptr. 74]; accord: 2 Jefferson, Cal. Evidence Benchbook (2d ed. 1982) Attorney's Work-

---

[1]This provision was renumbered as subdivision (h) by the 1984 amendment of section 2016. It was originally codified as subdivision (g).

Product Privilege, § 41.2, p. 1480.)[2] These cases directly analyze the issue in the context of third party adversaries attempting to obtain discovery of the attorney's work product.

*Lohman* v. *Superior Court, supra,* 81 Cal.App.3d 90, involved discovery efforts by defendants (the former conservator for the plaintiff and the attorney who had represented the conservator) to depose the plaintiff's former attorney. They sought to discover the opinions former counsel had formed as to (1) the culpability of the conservator and his counsel for their official acts that allegedly injured plaintiff as the conservatee and (2) the effect of a Probate Code statute upon plaintiff's rights. *Lohman* holds that the work product privilege is held exclusively by the attorney and criticizes the earlier opinion in *Mack* v. *Superior Court* (1968) 259 Cal.App.2d 7 [66 Cal.Rptr. 280], to the extent its language suggests that the work product privilege is intended for the benefit of, and may be asserted by, the client as well as the attorney. (*Id.,* at p. 101.)[3]

The most definitive analysis of the issue of the holder of the privilege is set forth in *Fellows* v. *Superior Court, supra,* 108 Cal.App.3d at pages 63-65. There a defendant insurance carrier in a "bad faith action" by its insured sought to compel discovery of the attorney work product generated by the plaintiff insured's former counsel in the prior, foundational uninsured motorist action between the insured and the carrier. The insured plaintiff had taken actual possession of the former attorney's litigation file on the prior action and issues arose in the bad faith action potentially subjecting the work product of the attorney to discovery. Writ review was granted of

---

[2]The work product privilege is, of course, a separate and distinct privilege from the attorney-client privilege existing under Evidence Code section 952. Section 953 of the Evidence Code provides that the client or his representative is the exclusive holder of the attorney-client privilege, and section 954, subdivision (c), provides that the attorney privy to the confidential communication may assert the attorney-client privilege in the client's absence if not instructed to the contrary. The purpose underlying this privilege is to encourage the client to fully disclose to his attorney all material facts concerning his case, be they favorable or unfavorable. (*Greyhound Corp.* v. *Superior Court* (1961) 56 Cal.2d 355, 396 [15 Cal.Rptr. 90, 364 P.2d 266].)

In contrast to the attorney-client privilege, the attorney work product privilege has been construed, in light of its stated purpose, to be held by the attorney so as to promote effective legal representation through full investigation of facts and research and analysis of applicable laws, be they favorable or unfavorable to the client's interest. (*Lohman* v. *Superior Court, supra,* 81 Cal.App.3d 90, 101; *Schlumberger, Ltd.* v. *Superior Court* (1981) 115 Cal.App.3d 386, 393-394 [171 Cal.Rptr. 413].)

There is no dispute in the present proceeding that the writings and information now sought by the beneficiaries may be protected only under the work product privilege because all such materials and private thoughts of petitioners were never communicated to the client.

[3]*Lohman*'s criticism of *Mack* is reconciled in *Fellows, supra,* 108 Cal.App.3d at pages 64-65, where it is pointed out that under the facts of *Mack,* the client merely asserted the privilege on behalf of the attorney holder in that attorney's absence.

a discovery order compelling disclosure to the carrier of the work product to which the insured asserted the work product privilege. The *Fellows* court held after careful analysis of prior cases on the issue, within and without California, that the work product privilege is held exclusively by the attorney who generated the product. The privilege survives the termination of litigation during which it was developed. A client in possession of such product may assert the privilege in a later action on behalf of the attorney in his absence. Further, the former attorney's transmittal of the case file, containing privileged work product does not constitute a waiver by the holder because the disclosure is not to disinterested parties or third parties but, rather, is limited to the client "whose interest in nondisclosure is supported by the policy reasons which underline the creation of the privilege. (Code Civ. Proc., § 2016, subd. (g).)" (*Id.*, at p. 66.)

The line of cases relied upon by petitioners culminates with *Rumac, Inc.* v. *Bottomley, supra,* 143 Cal.App.3d 810. *Rumac* involved a civil defendant's effort to compel the attorney who represented him in the prior business transaction from which the action arose to disclose in discovery the attorney's "absolute" work product developed on defendant's behalf during the transaction. The attorney moved for a protective order, asserting the work product privilege. Both the *defendant* and the plaintiff opposed the attorney's motion. The motion was granted as to documents representing the attorney's "impressions, conclusions, opinions, legal research and theories." (*Id.*, at p. 813.) Only the plaintiff sought appellate review of the discovery issue after judgment. The *Rumac* court held that the privilege had been validly asserted by the attorney. *Rumac* commented that because the client was not a party to the appeal, that court need not address the separate issue of "the *extent* of an attorney's liability for correctly asserting the absolute privilege against his former client's wishes which proximately causes damages to his former client." (*Id.*, at p. 812, fn. 3, italics added.)

*Rumac* pointed out in its analysis of whether the work product privilege should apply equally to attorney's legal services generated in a prior business transaction and in prior litigation, that "[i]n light of the legislative effort devoted to the statute, it is reasonable to believe that had the Legislature intended to limit the privilege to litigation only it would have said so." (*Id.*, at p. 815.)

The consideration of apparent legislative intent is perhaps even more appropriate in the present case. The Legislature expressly enacted an exception to the attorney-client privilege where the subject confidential attorney-client communication is sought in actions arising from a claim of breach of duty between client and attorney. (Evid. Code, § 958; *Schlumberger Ltd.*

v. *Superior Court, supra,* 115 Cal.App.3d at p. 392.) However, the Legislature did not create a similar exception to the work product privilege with regard to such actions between the client and the attorney. Yet, the discovery and use of the attorney's uncommunicated work product would be at least as material to determination of an attorney-client dispute (particularly legal malpractice) as would discovery and use of confidential communications. This absence of a parallel exception, together with the absolute language of the work-product privilege in section 2016, subdivision (b), supports the construction that "absolute" work product is "not subject to discovery under any circumstances."[4]

The beneficiaries contend that *Rumac* is distinguishable because there the plaintiff client who opposed his former attorney's assertion of the privilege was not a party to the appellate review of the discovery order. This argument is not persuasive. *Rumac* unequivocally held that the attorney was the holder of the privilege and affirmed the trial court's ruling which barred discovery by the client or his adversary. As quoted above, the comment of the *Rumac* court at page 812, footnote 3, of 143 Cal.App.3d, confirms its intended holding that the attorney effectively asserted the privilege against the former client. Had *Rumac* determined that the protective order was not lawfully granted, it would have been compelled to vacate it. Had it reached its holding on this issue only because the client was not a party to the appeal, it would have so explained and would not have commented as it did in footnote.

In accord with *Rumac, supra,* is *Travelers Ins. Companies* v. *Superior Court* (1983) 143 Cal.App.3d 436 [191 Cal.Rptr. 871] [petn. hg. den.]. There it was indicated that the trial court erred in possibly rejecting the application of the work product privilege asserted by an attorney sued for malpractice by his former client. The trial court ordered production by

---

[4] The question of whether the public policy consideration of achieving justice in the context of an actual legal malpractice action might be held to mandate an exception to the "absolute" privilege need not be reached by this court. In the underlying action, the work product is sought by litigation adversaries of the client. There is no suggestion that the trustee, acting in his own interests in defending the underlying removal and surcharge proceedings, desires the disclosure of the materials sought by the beneficiaries. This case does not present the same strong public policy considerations for creation of an exception as would discovery efforts by the client for the purpose of facilitating preparation of his own malpractice action against his former attorney. Also, the privilege's guarantee of protecting the attorney from compelled disclosure to future adversaries of his client is served in the present circumstances, while it would not be so served in an action exclusively between client and attorney.

This determination appears pragmatically appropriate in situations where, as here, the subject work product has not been communicated or produced to the client because the attorney alone knows what impressions, opinions, or legal research or theories are entitled to be protected under the principles underlying the privilege.

defendant of all work product generated while he was attorney of record for the former client in prior litigation. But because the trial court appeared to base its order only upon its resolution of the attorney-client privilege, the appellate court directed the trial court to reconsider the attorney's motion for protective order in a manner consistent with the views expressed in its opinion, stating: "We are aware of no precedent allowing even the former client of an attorney access to writings that reflect the attorney's 'impressions, conclusions, opinions, or legal research or theories.'" (*Id.*, at p. 453.)[5]

The line of cases relied upon by the beneficiaries for the contrary conclusion (*Kallen* v. *Delug* (1984) 157 Cal.App.3d 940, 950 [203 Cal.Rptr. 879]; *Weiss* v. *Marcus* (1975) 51 Cal.App.3d 590, 599 [124 Cal.Rptr. 297]; *Academy of California Optometrists, Inc.* v. *Superior Court* (1975) 51 Cal.App.3d 999, 1004-1005 [124 Cal.Rptr. 668]) do not address an assertion of the work product privilege in the discovery context. Rather, they concern the ethical duty of a discharged or withdrawing attorney to provide the former client with the litigation case file upon request so that new counsel could prepare the case for trial against the client's adversaries.

These cases do not analyze the question of the validity of the privilege as between attorney and client, nor do the facts of these cases require determination of whether the attorney is precluded from asserting the privilege when persons other than the client seek to obtain discovery indirectly by forcing the client to obtain the work product from his attorney.

*Weiss* v. *Marcus, supra,* 51 Cal.App.3d at page 599, held that a client who discharges his litigation counsel and retains new counsel to consummate the pending litigation "remains the owner" of the attorney's "work product" irrespective of whether the attorney has been paid for his services.

The circumstances giving rise to this holding were that an attorney who represented a client in litigation under a contingency fee and lien was discharged by the client. He was not paid the fee he thought due him when new counsel settled the litigation after performing substantial additional work. He sued the new attorneys under a theory, inter alia, of unjust enrichment from use of the work product generated by him prior to his discharge. (*Id.*, at p. 596.)

---

[5]We do not view the *Travelers* opinion as an analysis and holding concerning an attorney's entitlement to assert the work product privilege as against a former client suing for legal malpractice.

The *Weiss* court held that a demurrer to the "unjust enrichment" cause of action was correctly sustained because "[t]he 'work product' of an attorney belongs to the client, whether or not the attorney has been paid for his services. (See Opinions of the Com. on Legal Ethics of the L.A. County Bar Assn., Opn. No. 330, Nov. 30, 1972.)" *Weiss* did not separately identify the various types of materials contained in the transferred litigation file. ■ ■■■ No reference was made to privileged work product material and no analysis was attained concerning the conflict between the ethical duty to produce and the language of the work product privilege.[6]

The bar association opinion upon which *Weiss* relied exclusively concerned the ethical duty of discharged counsel to comply with the discharging client's demand for the case file irrespective of the payment for the legal services represented by that work product. The opinion quotes from prior opinion No. 197 which states "We are of the opinion, however, that an attorney should not govern his actions in this particular solely by what he may legally be compelled to do, but should, as a matter of professional ethics and good taste, allow his former client or succeeding counsel to inspect and make copies of the file. . . ." (*Id.*, at p. 118.) Opinion No. 330 does state the bar committee's opinion that " 'work product' for which the client may be billed, belongs to the client." (*Ibid.*) But no analysis or authority is given in support of this view.

*Kallen* v. *Delug, supra,* 157 Cal.App.3d 940, involved an attorney discharged in the course of litigation by his client. The attorney exacted a new written fee splitting agreement from the client's new attorney of record by refusing to turn over the case files until such agreement was executed. The discharged attorney sued the new attorney after the latter recovered judgment for the client and refused to honor the fee splitting agreement as void for lack of legal consideration on public policy grounds. On appeal, the *Kallen* court held that it is a breach of the attorney's duty imposed by rule 2-111(A)(2) of the California Rules of Professional Conduct for a discharged attorney to ". . . withdraw from employment until he has taken reasonable steps to avoid foreseeable prejudice to the rights of his client, including . . . delivering to the client all papers and property *to which the client is entitled, . . .*" (Italics added.) For this reason public policy precludes the discharged attorney from claiming as legal consideration for a split fee agreement with new counsel the transmittal of case files that the

---

[6]As is suggested in *Rumac, Inc.* v. *Bottomley, supra,* 143 Cal.App.3d 810, 812, footnote 3, the ethical duty of an attorney to comply with his client's wishes concerning disclosure of privileged attorney work product and the civil liability of the attorney for damages resulting to the client from the assertion of the privilege are different matters than the attorney's right to assert the privilege against his former client's wishes.

discharged attorney is under an ethical duty to provide. Citing *Weiss, supra,* 51 Cal.App.3d at page 599, the *Kallen* court declared the "attorney's work product belongs absolutely to the client whether or not the attorney had been paid for his services." *(Kallen* v. *Delug, supra,* 157 Cal.App.3d at p. 950.)

The *Kallen* court in no manner mentioned or attempted any analysis to vitiate the potential significance of the work product privilege in this context.

The third case relied upon by the beneficiaries is *Academy of California Optometrists, Inc.* v. *Superior Court, supra,* 51 Cal.App.3d at pages 1004-1005, which, like *Weiss, supra,* 51 Cal.App.3d 590, and *Kallen, supra,* 157 Cal.App.3d 940, involved a dispute between a discharged attorney of record and the former client as to the enforceability of the attorney's lien for payment of his fees, which lien was obtained in exchange for allowing the client access to the litigation file to pursue the action to consummation. That court also referred to work product in the generic, nonprivilege sense, although it recited that the file included pleadings, documents, "extensive notes, papers, memoranda, and communications collected during five years of representation." *(Id.,* 51 Cal.App.3d at p. 1004.) No reference was made to the issue of work product privilege. The court based its holding of unenforceability of the lien upon a duty to provide the case file under rule 2-111(A)(2) of the California Rules of Professional Conduct. *(Id.,* at p. 1005.)

So the *Weiss, Kallen,* and *Academy* analyses all rest upon the ethical duty of the discharged attorney to protect the interest of his former client by providing case files necessary to the client's continued litigation of his action. None of these cases mentions the issue of the attorney work product privilege as between discharged attorney and the client; none addresses the circumstance where disclosure of portions of the case file would ultimately be to the client's third party adversaries for a purpose adverse to the client's interests. Both rule 2-111(A)(2) relied upon in *Kallen, supra,* 157 Cal.App.3d 940, and *Academy, supra,* 51 Cal.App.3d 999, and "Opinion No. 330" relied upon in *Weiss, supra,* 51 Cal.App.3d 590, contemplate precluding an attorney from withholding files to the detriment of the former client. To the extent that *Weiss* and *Kallen* state that the case file "belongs to the client" in the absolute sense of legal title, these holdings would not necessarily be wholly supported by the ethical authority upon which they rely. The opinions only conclude that the attorney has an ethical duty to produce the case file when to refuse to do so would prejudice the former client.

■ Because *Rumac, supra,* 143 Cal.App.3d 810, *Fellows, supra,* 108 Cal.App.3d 55, and the earlier cases which they follow, analyze and hold upon the specific issue of the work product privilege in the context of efforts by third parties and former clients to discover "absolute" work product, we conclude that this line of cases correctly settles that the attorney is the sole holder of the privilege and may effectively assert it even as against a client.

Our conclusion is partly supported by the necessary acknowledgment that the additional factor of any third party adversary of the client seeking the work product alters the alignment of conflicting interest that exist solely between attorney and client in the *Weiss* line of cases. This additional factor also adds new considerations as to service of the purposes of the privilege. Although the trust beneficiaries in the underlying case have a fiduciary relationship with the trustee and although they were not opponents of the trustee when the subject work product was generated, they are presently litigation adversaries of the trustee client and thus, in this particular context, are more like than unlike the wholly adverse third party strangers involved in *Fellows, supra,* 108 Cal.App.3d 55 *Lohman, supra,* 81 Cal.App.3d 90, and *American Mut. Ins. Co., supra,* 38 Cal.App.3d 579. Further, there is a critical distinction between situations where the attorney's unethical withholding of work product would clearly prejudice the interests of his former client and situations where withholding would apparently serve the interests of his present client. As will later be discussed, while the beneficiaries are owed a duty of care by the trustee and the trustee's counsel, this duty, and the consequent potential civil liability, does not render the beneficiaries joint clients of the trustee's attorneys.

The beneficiaries contend that the absolute privilege is inapplicable vis-à-vis attorney and client because *Rumac* and the line of cases preceding it all involved situations where the attorney asserted the privilege as against third parties who had interests adverse to that of the client as of the time the work product was generated. They argue that because they had a fiduciary relationship with the trustee when the subject work product was generated, and still have such legal relationship, the purpose of the privilege does not apply.

The fallacy in the beneficiaries argument is the premise that the privilege attaches only with regard to who is the client's adversary at the time the work product is generated. This is inconsistent with the express purpose of the privilege. ■ The ultimate purpose of the privilege is to promote and facilitate full factual investigation and legal research and analysis by attorneys in representation of their clients. (*Schlumberger* v. *Superior Court,*

*supra,* 115 Cal.App.3d at pp. 393-394; *Popelka, Allard, McCowan & Jones* v. *Superior Court* (1980) 107 Cal.App.3d 496, 501 [165 Cal.Rptr. 748]; *Hickman* v. *Taylor* (1947) 329 U.S. 495, 511 [91 L.Ed. 451, 462-463, 67 S.Ct. 385].) The protection afforded by the "absolute" privilege attaches and the purpose thereof is fully served at the time the attorney generates the written work product in representation of his client. In contrast, the "conditional" aspect of the privilege expressly provides for its application depending upon circumstances and considerations developing after generation of the product.

Thus, under the privilege the attorney for the trustee was encouraged to investigate and analyze fully his client's alternatives, even though some of these alternatives be arguably adverse to the beneficiaries, knowing that the process of full research and candid analysis is absolutely protected against compelled disclosure for use against his client. Unless the beneficiaries are also clients of the attorney in the sense contemplated by the section 2016, subdivision (b) privilege, the principal purpose of the privilege is here served only by upholding its absolute character.

■ There are strong ethical public policy considerations for concluding that the client has an absolute right of access to all work product generated by his attorney in representing the client's interests. In the absence, however, of any statutory exception parallel to that created by Evidence Code section 958 relative to the attorney-client privilege, we are compelled by the absolute language of section 2016, subdivision (b), and the express statement of purpose in subdivision (h), to conclude that the attorney is the intended exclusive holder of the work product privilege and that it may be asserted even against his client in the context of litigation where adversaries of the client seek discovery for use against the client.

We reemphasize the narrowness of this holding and repeat that we do not consider the far stronger public policy considerations involved in discovery where the client seeks his former attorney's work product to prepare his own case against that attorney.

■ A court must construe a statute reasonably, endeavoring to ascertain the legislative intent. If the construction does not result in patently absurd results, we may not construe a statute contrary to its plain language and ostensible intent merely because we disagree with the wisdom thereof. (*In re Estate of Carter* (1935) 9 Cal.App.2d 714, 718 [50 P.2d 1057].)

If the Legislature did not intend the result reached here, it is up to the Legislature to appropriately amend the statute to provide an exception to its absolute language.

II

*The Public Policy Underlying Full Disclosure by Trustee to Beneficiary Does Not Overcome the Manifested Legislative Intent to Create an Absolute Privilege.*

■ The beneficiaries correctly point out that decisions in California and in other states, as well as commentators, have adopted the rule that the trustee's fiduciary duty of full disclosure to the trust beneficiaries extends to all contents of the trustee's file concerning trust administration matters affecting the trust interests of the beneficiaries. (*Strauss* v. *Superior Court* (1950) 36 Cal.2d 396, 401-402 [224 P.2d 726]; *Riggs Nat. Bank* v. *Zimmer* (Del. 1976) 355 A.2d 709; Rest.2d Trusts, § 173, pp. 378-379; 2 Scott on Trusts (3d ed. 1967) The Administration of the Trust, § 173, pp. 1406-1407.)

Petitioners do not dispute this rule of law or its application in California. However, petitioners maintain that the rule as to the right of the beneficiaries to have full access to the trustee's file is irrelevant to the present issue of whether the attorney holds the work product privilege and may assert it effectively against even the trustee client.

We have determined that petitioners are correct. *Strauss* v. *Superior Court, supra,* 36 Cal.2d at pages 401 and 402, states the rule that a trustee owes the beneficiaries the duty of full and accurate disclosure of trustee's files regarding administration of the trust estate. Trustee's records are deemed part of the trust and beneficiaries' right of inspection derives from their common interest in the trust property.

The strongest case relied upon by the beneficiaries is the Delaware case of *Riggs Nat. Bank of Washington, D.C.* v. *Zimmer, supra,* 355 A.2d 709. There trust beneficiaries sought to compel discovery of a memorandum prepared by the trustee's counsel upon the trustee's request to aid in his administration of the trust with regard to certain tax problems. Apparently, the memorandum was given to the trustee when completed. In a subsequent action by the beneficiaries against the trustee, the beneficiaries sought discovery of the memorandum. The trustee asserted the attorney-client and attorney work product privileges as those privileges existed in the State of Delaware.

The *Riggs* court decided the issue solely on policy consideration grounds under the Delaware work product privilege statute which limits the privilege to work product. Rule 26(b)(3) of the Chancery Court Rules provides in

relevant part: "prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative . . . only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case . . . . In ordering discovery of such materials when the required showing has been made, the Court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney . . . concerning the litigation." (*Id.*, at p. 715.)

*Riggs* reasoned that although the attorney holds the privilege, the trustee requested the legal memorandum be prepared for the ultimate benefit of the trust beneficiaries and the public policy of promoting the full disclosure inherent in the trustee's fiduciary duty to the beneficiaries required that the competing public policy of encouraging complete and candid representation by attorneys underlying the Delaware attorney work product privilege must yield to the greater interest.

While *Riggs* is a clear holding contrary to that reached herein, *Riggs* is materially distinguishable and has no precedential value in California.

First, the Delaware work product privilege differs in at least one critical respect from California's. While California's "absolute" privilege squarely states that the writings "shall not be discoverable under any circumstances," the Delaware privilege appears to allow discretion to the courts to protect an attorney's legal impressions by weighing the purpose of the privilege against the competing interests of the adversary seeking discovery.

Second, in *Riggs,* it appears that the legal memorandum requested by the trustee was transmitted to him by his attorney, and he thus knew of its contents and perhaps acted thereon or in spite thereof. In significant contrast, the trustee here never received the "uncommunicated" memoranda generated by his counsel. Such memoranda could thus only be significant to the beneficiaries to the limited extent they reflect the times when the attorneys were investigating, soliciting or negotiating possible sales of the Getty Oil shares. The times the attorneys were performing these particular services, which is the only aspect of the legal services the beneficiaries assert as material to their removal and surcharge petitions, may be obtained by discovery of general work product. Thus, the need of the beneficiaries to obtain the attorneys' mental impressions in this case is not parallel to that of the beneficiaries in *Riggs* who needed to know (and could not otherwise obtain so accurate an account of) what legal advice the trustee acted upon.

Additionally, *Riggs* acknowledges a contrary result in *In re Prudence-Bonds Corporation* (E.D.N.Y. 1948) 76 F.Supp. 643, which appears to be

the only other reported case addressing a similar discovery effort by a beneficiary to obtain work product of the trustee's attorney. *Riggs* distinguished *Prudence-Bonds* on the ground that *Prudence-Bonds* involved "an indenture trustee for an issuance of corporate bonds" and that such a trust was significantly different in terms of trustee accountability to particular beneficiaries and in terms of public interest in maintaining full disclosure than the private trust before *Riggs*. *Riggs* characterized the indenture trust as consisting of more conflicting duties that attenuate the trustee-beneficiary relationship.

While the *Riggs* distinction of *Prudence-Bonds* is not immune to question, we need not definitively analyze the distinction offered because, as pointed out, our contrary result rests upon our construction of the California statute controlling the privilege and other California statutory and case law.

Accordingly, while we are mindful of the strong public policy interest in maintaining full disclosure under the fiduciary relationship between trustee and beneficiary—which caused the *Riggs* court to reach its result—we are persuaded that the absolute language in which the Legislature cast the work product privilege in California requires that this difficult choice be made in favor of preserving the privilege.

### III

*The Beneficiaries Are Not Clients of the Trustee's Attorneys.*

We turn now to the final question to be resolved: Are the beneficiaries secondary or joint clients of the trustee's attorneys by virtue of the analysis that all the legal services performed by the attorneys, to assist the trustee in administration of the trust, were intended to ultimately benefit the beneficiaries?

The beneficiaries urge that *Morales v. Field, De Goff, Hupert & MacGowan* (1979) 99 Cal.App.3d 307 [160 Cal.Rptr. 239], stands for the proposition that counsel for a trustee has a "joint client" relationship with the trustee and the trust beneficiaries. However, the *Morales* holding does not extend so far.

*Morales, supra,* held that counsel for a probate executor and testamentary trustee owes a duty of care to the trust beneficiary to disclose an ostensible conflict of interest in administration of the trust by the trustee. There, the trustee caused the estate to guarantee a loan extension without advising the trust remainderman. The loan was made in favor of a third party corporation which counsel also represented. A principal of the corporation was the life income beneficiary of the trust. The remainderman sued the trustee's coun-

sel for negligent breach of duty. It was held that a trust beneficiary (as an intended third party beneficiary of the attorney-client relationship) "not in privity" may have a cognizable cause of action against the trustee's counsel for negligence. In so holding, the *Morales* court extended the *Goodman* v. *Kennedy* (1976) 18 Cal.3d 335, 342-343 [134 Cal.Rptr. 375, 556 P.2d 737], doctrine of liability to intended third party beneficiaries on the basis of public policy considerations. (*Id.*, 99 Cal.App.3d at p. 315.)

*Morales* reasoned that because the trustee owes a fiduciary duty of loyalty and full disclosure to all beneficiaries, "[a]n attorney who acts as counsel for a trustee provides advice and guidance as to how that trustee may and must act to fulfill his obligations to all beneficiaries. It follows that when an attorney undertakes a relationship as advisor to a trustee, he in reality also assumes a relationship with the beneficiary *akin* to that between trustee and beneficiary." (*Id.*, at p. 316, italics added.) However, this falls short of a holding that the beneficiary is a client of the trustee's counsel. That this gap is not bridged is made clear by the *Morales* court's repeated reference to the application of the *Goodman* doctrine to create liability in favor of intended third party beneficiaries who are "*not in privity*" with the attorney-client relationship. (*Id.*, at p. 315.)

Further, *Morales* did not concern the work product privilege issue in any regard.

Neither is the holding of *Aetna Casualty & Surety Co.* v. *Superior Court* (1984) 153 Cal.App.3d 467 [200 Cal.Rptr. 471], helpful in establishing a joint client situation here.

*Aetna* involved a claim by an insured against his insurer. When the claim was presented, the insurer retained an attorney to evaluate whether there was coverage. The insurer then rejected the claim and the insured sued and sought discovery of the work product developed by the attorney upon the reasoning that the insured and the insurer were joint clients of the attorney. In the resulting proceeding in mandate, the *Aetna* court ruled that the trial court order compelling production was an abuse of discretion because the insurer retained the attorney exclusively to evaluate the claim for it. Thus, there was no attorney-client relationship between the insured and the attorney that could potentially abrogate operation of the privilege.

Neither does recently decided *Miller, Morton, Caillat & Nevis* v. *Superior Court* (Cal.App.)[7], help the beneficiaries to establish that they are the joint clients of the trustee's counsel.

---

[7]The Supreme Court has ordered that the *Miller* opinion is not to be published in the Official Reports.

*Miller* involved a dispute between various general partners of several partnerships that had been formed by defendants with the legal assistance of their attorneys. At least one defendant and one plaintiff became a partner in each partnership. In related litigation the plaintiffs sought discovery of the "absolute" work product of the attorneys who had assisted in formation of the partnerships and had thereafter counseled the partnerships. The *Miller* court determined that as of the time the partnerships came into existence and plaintiffs became general partners therein; the attorneys originally retained by defendants became the attorneys for the partnerships and thus plaintiffs were joint clients entitled to discovery of the "absolute" work product generated while plaintiffs were general partners.

There is a critical distinction to be made, however, between the relationship of general partners and that between a trustee and trust beneficiaries. All general partners have equal duties and powers in management of the partnership and the partnership property is jointly owned by the partners. (Corp. Code, §§ 15010, 15018.) Every general partner has authority to act to bind the partnership. (Corp. Code, § 15009, subd. (1).) The partners may resolve internal disputes by majority vote and must in certain circumstances act by unanimous consent. (Corp. Code, § 15018, subd. (h).) Thus, legal counsel provided to the partnership is intended to and does assist each and every general partner to fulfill his joint management duties.

Accordingly, there is no analogy between the general partners and trust beneficiaries *who have no duties or powers of administration* and who, as in the present case, never obtained administration counsel from the trustee's attorneys. In *Miller,* it was pointed out that only the attorneys originally retained by the defendant partners ever counseled the partnership or the general partners concerning partnership business. In contrast, the reality of the underlying matter is that the beneficiaries were always assisted by their own independent counsel. Because of our determination that the trustees are not joint clients of the trustee's counsel, we need not reach the question of whether and to what extent *Miller* is inconsistent with *Rumac, supra,* 143 Cal.App.3d 810.

Finally, the beneficiaries place substantial reliance upon the analysis (derived from the Restatement of Trusts and foreign-state opinions) that because an attorney for a trustee is paid with funds from the trust corpus, and the beneficiaries have the beneficial interest in that corpus, it follows that all information generated by the attorney relative to administration of the trust is, in a meaningful sense, "trust property" and there is a duty owed by the attorney to disclose the contents of his files to the beneficiaries. This general analysis, however, is not wholly applicable or sufficiently refined

to control the circumstances of our case. While it is true that every dollar paid from the trust corpus for legal counsel in the administration of the trust immediately diminishes the corpus balance, it does not follow that it is the beneficiaries who have made such payments.

A necessary aspect of the cost of administration of trusts, particularly large and complex trusts consisting of large corpuses, is the cost of legal counsel and accountants retained by the trustee. Every trustor either explicitly provides for, or implicitly contemplates, legal counsel assisting the trustee to be paid from the trust corpus. Trust funds paid for such costs of administration are not assets of particular trust beneficiaries. Payment of counsel from the undesignated portion of trust funds intended for costs of administration is thus not a use of funds intended to go to current income beneficiaries or to future income or principal beneficiaries. It is, rather, a payment from the trust corpus of a cost necessary and contemplated to be paid prior to calculation of the portion of the trust corpus due any particular beneficiary.

■ Neither do we accept the premise that payment of attorneys' fees in itself determines the attorney-client relationship. Payment is but one indicia; the contractual intent and conduct of the parties are critical to formation of such relationship. (*Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176, 181 [98 Cal.Rptr. 837, 491 P.2d 421].)

Neither does a joint-client status exist here analogous to that found to exist between insured, insurer, and defense counsel in *American Mut. Liab. Ins. Co.* v. *Superior Court* (1974) 38 Cal.App.3d 579 [113 Cal.Rptr. 561]. There an insurer retained an attorney to represent its insured in a malpractice action. The insured and insurer later became estranged and confidential communications of insurer and the attorney were sought by the insured in his resulting action against the insurer for misfeasance. *American Mutual* pointed out that an attorney-client relationship is created by contract (*id.,* at p. 590) and concluded that the attorney served joint clients, insured and insurer, owing them independent but overlapping duties in light of their common purpose of defending a malpractice action.

The situation in *American Mutual* is materially distinguishable from the one here presented. First, here it is the trustee who retained his counsel and who engaged in exclusive confidential communications with counsel. The beneficiaries had no direct interplay with counsel affecting the trustee's administration decisions based upon the legal counsel provided. Second, there is no suggestion that the trustee's retention of his counsel involved any contractual intent to render the trust beneficiaries joint clients as op-

posed to third party beneficiaries of the legal services provided. Third, as stated earlier, mere payment of the attorney from trust funds does not itself create the contractual relationship.

IV

*Conclusion.*

Finally, to aid the respondent in its *in camera* determination of what materials qualify for protection under the views expressed herein (*Fellows* v. *Superior Court, supra,* 108 Cal.App.3d at p. 68), we point out that subdivision (b) should be construed to protect all internal, oral communications between petitioners that were eventually reduced to written form by them and were not communicated outside of petitioners' law firm.

Let a peremptory writ of mandate issue directing respondent to vacate its order of April 15, 1985, in Los Angeles Superior Court case No. P 685566, entitled in the matter of the declaration of trust of Sarah C. Getty dated December 31, 1934, which compels petitioners herein to disclose in discovery materials containing their "impressions conclusions, opinions, or legal research or theories" to the trust beneficiaries, and to make a new and different order denying discovery as to those materials that qualify under the statutory description of writings that are not subject to discovery under any circumstances.

McClosky, J., and Arguelles, J., concurred.

A petition for a rehearing was denied October 8, 1985, and the petitions of real parties in interest for review by the Supreme Court were denied December 19, 1985. Bird, C. J., did not participate therein.