[Civ. No. 53705. First Dist., Div. Four. Aug. 31, 1982.]

BOARD OF MEDICAL QUALITY ASSURANCE, Plaintiff and
Appellant, v.
HAZEL HAWKINS MEMORIAL HOSPITAL et al., Defendants
and Respondents.

COUNSEL

George Deukmejian, Attorney General, and R. Richard Arnold, Deputy Attorney General, for Plaintiff and Appellant.

David E. Pipal, District Attorney, and Harry J. Damkar, Deputy District Attorney, for Defendants and Respondents.

OPINION

POCHÉ, J.—The Division of Medical Quality of the Board of Medical Quality Assurance[1] appeals from an order of the San Benito County

---

[1] The Board of Medical Quality Assurance is a state agency within the Department

Superior Court denying its petition to compel respondents, Hazel Hawkins Memorial Hospital and its administrator, Thomas J. Harn, to produce hospital records pertaining to four unnamed patients. We reverse.

*Facts*

Appellant, the Division of Medical Quality, is responsible for reviewing the quality of the medical practice in the State of California, and instituting, if necessary, disciplinary actions against physicians and surgeons.[2] (§ 2004.)

As required by section 805,[3] respondent hospital reported to appellant that it had revoked the clinical and admitting privileges of Dr. B. on February 20, 1980. This "805" report listed the following six reasons for the action: (1) In the past three years, there had been three separate cases of "inappropriate medical care," and as a result of one of them in October of 1977, Dr. B. lost his privileges to attend patients in the intensive care and coronary care units; (2) in November of 1977, Dr. B.'s emergency room privileges were withdrawn; (3) in January of 1979, his privileges in surgery, obstetrics and medicine were restricted; (4) during the past three years Dr. B. had two "syncopal" (fainting) attacks while assisting in surgery; (5) as a consequence of the attacks and his age, Dr. B. was requested by the hospital to undergo a complete physical and neurological examination, but as of February 1980, he had not complied with that request; and (6) a recent case of "inappropriate medical judgment and care" resulted in the revocation of Dr. B.'s clinical and admitting privileges in February of 1980. The "805" report did not identify the four patients who had received the inappropriate medical care from Dr. B.

of Consumer Affairs. (Bus. & Prof. Code, § 2001.) The board is composed of three divisions: (1) the Division of Medical Quality, (2) the Division of Licensing, and (3) the Division of Allied Health Professions. (Bus. & Prof. Code, § 2003.)

Unless otherwise indicated, all further statutory references are to the Business and Professions Code.

[2]Appellant's statutory duties are: "(a) The enforcement of the disciplinary and criminal provisions of the Medical Practice Act. [¶] (b) The administration and hearing of disciplinary actions. [¶] (c) Carrying out disciplinary actions appropriate to findings made by a medical quality review committee, the division, or an administrative law judge. [¶] (d) Suspending, revoking, or otherwise limiting certificates after the conclusion of disciplinary actions. [¶] (e) Reviewing the quality of medical practice carried out by physician and surgeon certificate holders under the jurisdiction of the board." (§ 2004.)

[3]Section 805 provides in part: "The chief executive officer and the chief of the medical staff, where one exists, of any health facility licensed pursuant to Division 2 (commencing with Section 1200) of the Health and Safety Code, or any health care service plan or medical care foundation shall report to the agency which issued the license, cer-

After receipt of the report, appellant began to investigate the circumstances surrounding the hospital's action with respect to Dr. B. After appellant's investigator failed in his attempt to secure additional information from the hospital administrator, he served an investigational subpoena duces tecum on respondent Harn, commanding him to produce: "1. The three patient charts containing evidence of inappropriate medical care by [Dr. B.], M.D., which resulted in the loss of his privileges to attend patients in ICU/CCU on 10-13-77" and "2. The patient chart which indicated inappropriate medical judgment and care by [Dr. B.], M.D., resulting in the revocation of his clinical and admitting privileges on 2-20-80." Attached to the subpoena was the investigator's declaration which: (a) stated that he was conducting an investigation of Dr. B. involving an allegation of inappropriate medical treatment of four patients over the past three years; (b) set forth the contents of the "805" report, and the refusal of Harn to supply the necessary information; and (c) stated "[i]nasmuch as we have no independent knowledge of the facts surrounding the actions" taken against the physician by the hospital, "we must have the patient records to determine whether or not a violation of the Medical Practices Act exists. [¶] The activities, if confirmed, are violations of the Business and Professions Code ... Section 2361(b) (gross negligence) and 2361(d) (incompetence)." Finally, the declaration noted that it was impossible for appellant to obtain consent from the patients because their identities would not be disclosed by the hospital.

After Harn refused to produce the records, appellant filed a petition for an order compelling respondents to testify and produce papers and records. (See, Gov. Code, §§ 11186-11188.)

After a hearing, the superior court denied the petition. This appeal follows.

---

tificate or similar authority when any licensed physician and surgeon, clinical psychologist, podiatrist, or dentist is denied staff privileges, removed from the medical staff of such institution or if his staff privileges are restricted for a cumulative total of 45 days in any calendar year for any medical disciplinary cause or reason. Such reports shall be made within 20 working days following such removal or restriction, shall be certified as true and correct by the chief executive officer and the chief of the medical staff, where one exists, and shall contain a statement detailing the nature of the action, its date and all of the reasons for, and circumstances surrounding, such action. If the removal or restriction is by resignation or other voluntary action that was requested or bargained for in lieu of medical disciplinary action, the report shall so state. ... [¶] Failure to make a report pursuant to this section shall be a misdemeanor punishable by a fine of not less than one hundred dollars ($100) nor more than six hundred dollars ($600)."

*Discussion*

■ The sole question is whether appellant's showing before the superior court was sufficient to require the issuance of an order compelling compliance with the subpoena. It was.

Our starting point is *Brovelli* v. *Superior Court* (1961) 56 Cal.2d 524, 529 [15 Cal.Rptr. 630, 364 P.2d 462], which sets forth a threefold test for subpoenas issued by administrative agencies: (1) the inquiry must be one that the agency demanding production is authorized to make; (2) the demand must not be too indefinite; and (3) the information sought must be relevant. (See also *Barnes* v. *Molino* (1980) 103 Cal.App.3d 46, 54 [162 Cal.Rptr. 786].)

There is no question but that the inquiry by appellant is one that it is authorized to make. (See §§ 101.6, 108; Gov. Code, § 11180 et seq.) Nor can it be said that the demand is too indefinite. On the contrary, the demand was specific, limited, and in the same language respondent hospital had employed in its "805" report which had triggered the investigation. Finally, the relevancy of the charts is equally apparent: appellant's determination of whether to instigate disciplinary action against Dr. B. would hinge upon an analysis of his medical treatment of the four patients.

When an investigative subpoena seeks production of individually identifiable medical records the demanding agency must also demonstrate that the right of privacy of the patient is protected. (*Board of Medical Quality Assurance* v. *Gherardini* (1979) 93 Cal.App.3d 669, 679 [156 Cal.Rptr. 55].) "The state of a person's gastro-intestinal tract is as much entitled to privacy from unauthorized ... bureaucratic snooping as is that person's bank account, the contents of his library or his membership in the NAACP." (*Ibid.*) However, this additional privacy safeguard was not infringed here because neither disclosure of the patients' identities nor disclosure of identifying medical information was requested. Appellant merely sought the unnamed charts of four of Dr. B.'s patients. No further showing was required of appellant.[4]

---

[4]In light of this holding, it is unnecessary for us to decide whether the Legislature's action in making appellant's investigatory action confidential (Gov. Code, § 6254, subd. (f)) is sufficient, as a matter of law, to protect the patient's privacy interest as delineated in *Gherardini*.

■ Respondents' sole remaining argument, that compelling production of the four charts would violate the physician-patient privilege, fails in the face of Evidence Code section 1007 which provides: "There is no privilege under this article in *a proceeding* brought by a public entity to determine whether a right, authority, license, or privilege ... should be revoked, suspended, terminated, limited, or conditioned." (Italics added.)[5] Because testimony can be compelled in appellant's investigation of Dr. B. (see Gov. Code, § 11181, subd. (e)), it is a "proceeding." (Evid. Code, § 901.)[6] Therefore, the physician-patient privilege does not apply to this investigative "proceeding" conducted by appellant to determine whether Dr. B.'s license "should be revoked, suspended, terminated, limited, or conditioned." (Evid. Code, § 1007.)[7]

In sum, appellant's showing before the superior court was, as a matter of law, sufficient to require the issuance of an order compelling compliance with the subpoena.

The judgment is reversed, and the matter is remanded to the superior court for proceedings consistent with the views expressed herein.

Caldecott, P. J., and Christian, J., concurred.

---

[5]Evidence Code section 1007 is located in article 6 of chapter 4 of division 8 of the Evidence Code, which is entitled "Physician-Patient Privilege."

[6]Evidence Code section 901 defines a "[p]roceeding" as "any action, hearing, *investigation*, inquest, or inquiry (whether conducted by a court, administrative agency, hearing officer, arbitrator, legislative body, or any other person authorized by law) in which, pursuant to law, testimony can be compelled to be given." (Italics added.)

[7]We do not read *Gherardini* to hold otherwise, although the opinion's final paragraph is troublesome: "By interposition of such minimal due process requirements the mandate of *Katz* v. *United States* [(1967) 389 U.S. 347 [19 L.Ed.2d 576, 88 S.Ct. 507]]; *Griswold* v. *Connecticut* [(1965) 381 U.S. 479 [14 L.Ed.2d 510, 85 S.Ct. 1678]], and article I, section 1, of the California Constitution will be fulfilled *and Evidence Code section 1007 held constitutional.*" (*Board of Medical Quality Assurance* v. *Gherardini, supra,* 93 Cal.App.3d at pp. 681-682, italics added.)
There is no constitutional provision that we know of which would prohibit a so inclined Legislature from totally abolishing the physician-patient privilege. Nor is there any constitutional prohibition against abolishing the privilege in certain instances, such as the Legislature has done by enacting Evidence Code section 1007.
Therefore, we interpret *Gherardini* as holding that where the patient's right of privacy is coterminous with the physician-patient privilege, Evidence Code section 1007 cannot be read to destroy both.