[No. B028929. Second Dist., Div. Six. Oct. 23, 1987.]

CASMALIA RESOURCES, LTD., Plaintiff and Appellant, v. COUNTY OF SANTA BARBARA et al., Defendants and Respondents.

COUNSEL

C. Michael Cooney, Eric P. Hvolboll, Dana M. Sabraw and Price, Postel & Parma for Plaintiff and Appellant.

Kenneth L. Nelson, County Counsel, and Jed Beebe, Deputy County Counsel, for Defendants and Respondents.

OPINION

ABBE, J.—Casmalia Resources, Ltd. (Casmalia) appeals from an order denying its complaint for a preliminary injunction to enjoin the enforcement of a Santa Barbara County ordinance affecting Class I hazardous waste facilities. Pursuant to Casmalia's petition for a writ of supersedeas, we ordered a temporary stay of the enforcement of the ordinance pending our decision on appeal. We now affirm the order of the trial court denying the preliminary injunction, and dissolve the temporary stay.

FACTS

Casmalia operates a Class I hazardous waste management facility in Santa Barbara County. A Class I facility is licensed to handle highly toxic wastes.

In 1981 the state Legislature enacted Health and Safety Code[1] section 25149. Subdivision (a) of that section provides in pertinent part: "[N]o city or county . . . may enact, issue, enforce, suspend, revoke, or modify any ordinance . . . relating to an existing hazardous waste facility so as to prohibit or unreasonably regulate the disposal, treatment, or recovery of resources from hazardous waste . . . at that facility, unless, after public notice and hearing, the director [of the State Department of Health Services (DOHS)] determines that the operation of the facility may present an imminent and substantial endangerment to health and the environment. However, nothing in this section authorizes an operator of that facility to violate any term or condition of a local land use permit or any other provision of law not in conflict with this section."

The hearing to be held by the director of DOHS is known as a "501" hearing derived from the number of the senate bill by which the legislation was introduced.

In June of 1986 the director of DOHS held a 501 hearing concerning the Casmalia facility. After the hearing the director concluded that ". . . the information available to me does not justify a determination that the operation of the Casmalia Resources Facility may present an imminent and substantial endangerment to health and the environment within the meaning of Health and Safety Code section 25149."

However, in an exhibit to that report the director stated: "At the present, there is no conclusive evidence that off-site migration of hazardous waste constituents has occurred. This does not mean that off-site migration is not occurring, only that it has not been detected in the existing monitoring system at the site. The geologic and hydrogeologic information currently available for the site is inadequate."

On April 13, 1987, the County of Santa Barbara passed ordinance number 3638. The ordinance provides that the county health officer shall create by June 1, 1987, a monitoring program for Casmalia capable of detecting any off-site migration of liquid hazardous waste and on-site or off-site air pollution which could constitute a health hazard. (Santa Barbara County Code, § 18-50.)

If Casmalia believed that the program created by the health officer is unreasonable it had the right to appeal to the Board of Supervisors (Board) by June 9, 1987. If an appeal is filed, the ordinance requires a public hearing

---

[1] All further statutory references are to this code unless otherwise specified.

to be held before the Board to determine the reasonableness of the program. The Board can grant such relief as is reasonable. (*Ibid.*)

Subsequent changes in the monitoring program may be ordered where "significant new information" becomes available to the health officer or upon application of Casmalia. (*Id.,* § 18-54.)

Willful violation of the ordinance is a misdemeanor (*id.,* § 18-51) and can subject Casmalia to a civil penalty not to exceed $25,000 for each day that the violation continues. (*Id.,* § 18-52.)

Although the ordinance purports to govern all Class I facilities, Casmalia operates the only such facility in the county.

On June 22, 1987, Casmalia filed a complaint for declaratory relief asking the court to declare the ordinance invalid, and for preliminary and permanent injunctions enjoining the enforcement of the ordinance. The complaint was based on the theory that the subject matter of the ordinance is preempted by state law, and that the ordinance itself is unreasonable.

After a hearing the trial court denied the preliminary injunction. Casmalia petitioned us for a writ of supersedeas. We issued a temporary stay on July 27, 1987, and ordered that the appeal from the denial of the preliminary injunction be expedited.

### DISCUSSION

■ The purpose of a preliminary injunction is the preservation of the status quo until a final determination of the merits of the action. (*Continental Baking Co.* v. *Katz* (1968) 68 Cal.2d 512, 528 [67 Cal.Rptr. 761, 439 P.2d 889].)

■ The grant or denial of a preliminary injunction rests in the sound discretion of the trial court, and the order may not be interfered with on appeal, except for an abuse of discretion. (*IT Corp* v. *County of Imperial* (1983) 35 Cal.3d 63, 69 [196 Cal.Rptr. 715, 672 P.2d 121].) ■ In exercising its discretion the trial court should evaluate two interrelated factors: The first is the likelihood that the plaintiff will prevail on the merits at trial, and the second is the interim harm the plaintiff is likely to sustain if the injunction were denied as compared to the harm the defendant is likely to suffer if the preliminary injunction were issued. (*Id.,* at pp. 69-70.)

## I.

We turn our attention to a consideration of the first factor: whether the trial court erred in determining that it is not likely Casmalia will prevail on the merits. Casmalia contends it is reasonably probable it will prevail on the merits because: (A) the state has preempted local regulation of Class I hazardous waste facilities unless a hearing is conducted and appropriate findings are made by the director of DOHS; and (B) even if reasonable local regulation is allowed, the instant ordinance is unreasonable and void.

### (A) *State Preemption of Local Regulation*

Local legislation in conflict with the general law is void; a conflict exists where a local ordinance enters into an area fully occupied by the general law, either expressly or by legislative implication. (*Lancaster* v. *Municipal Court* (1972) 6 Cal.3d 805, 807-808 [100 Cal.Rptr. 609, 494 P.2d 681].)

### (1) *Express Preemption*

Our first task is to determine whether state law expressly preempts all local regulation of hazardous waste facilities absent a hearing and appropriate findings by DOHS.

### (a) *Whether Health and Safety Code section 25149 expressly preempts local regulation.*

In the absence of a determination by the director of DOHS that a hazardous waste facility presents an imminent and substantial danger, section 25149 prevents a city or county from acting so as to "prohibit or unreasonably regulate" the disposal or treatment of hazardous waste.

If the Legislature had intended to preempt all local regulation of hazardous waste facilities prior to a finding of danger by DOHS, we assume it would have said so. (See, e.g., § 25167.3 which provides in pertinent part: "It is the intent of the Legislature that this article preempt all local regulations and all conflicting state regulations concerning the transportation of hazardous waste . . . .") Instead section 25149 only prevents unreasonable regulation by cities and counties. The inescapable conclusion is that reasonable regulation by local governments is allowed even prior to a finding of danger by DOHS.

Legislative findings and declarations embodied in the same article as section 25149 (§§ 25146-25149.7) show the concern of the Legislature in enacting section 25149 was that local governing entities not be allowed to close hazardous waste facilities without a finding by the director of DOHS of substantial endangerment.

Section 25146 provides: "The Legislature finds and declares that the number of hazardous waste disposal facilities is decreasing in the face of increasing demand, and that under present circumstances and law, imbalance between supply and demand is likely to further increase in the foreseeable future. This problem is general in nature, and does and will continue to exist in urban, suburban, and rural areas."

Section 25146.5 provides: "The Legislature further finds and declares: [¶] (a) It is a matter of urgent public necessity and statewide concern that the number of existing hazardous waste facilities be retained to the extent feasible. [¶] (b) The availability of land suitable and capable of being developed as hazardous waste disposal sites is decreasing. [¶] (c) Any decrease in the number of existing hazardous waste facilities increases the distance that it is necessary to transport hazardous waste in order to properly dispose of it. [¶] (d) An increase in the distance which it is necessary to travel in order to properly dispose of hazardous waste encourage illegal disposal."

That the Legislature did not intend to preempt all local ragulation of hazardous waste facilities is not only apparent from the use of the word "unreasonably" to modify "regulate" but it can also be seen in section 25147 which provides, "[e]xcept as expressly provided in section 25149, it is not the intent of this article to preempt local land use regulation of existing hazardous waste facilities"; and section 25149 itself provides in the final sentence of subdivision (a), ". . . nothing in this section authorizes an operator of that facility to violate any term or condition of a local land use permit or any other provision of law not in conflict with this section."

Taken together all of these code sections show that the Legislature did not intend to preempt local ordinances which do not have the effect of closing an existing hazardous waste facility by prohibiting the disposal and treatment of toxic waste. Such ordinances are reasonable regulation within the meaning of section 25149 even prior to a DOHS hearing.

Casmalia argues the legislative history of section 25149 shows the Legislature intended to preempt all local regulation relating to the disposal of hazardous waste. In support of this argument Casmalia has provided us with analyses or reports by various legislative committees which considered

Senate Bill No. 501, 1981-1982 Regular Session, by which section 25149 was originally enacted, and Assembly Bill No. 650, 1985-1986 Regular Session, by which section 25149 was amended in ways not relevant here.

A report of Conference Committee No. 2 regarding Assembly Bill No. 650, dated August 20, 1986, stated that current law (that is, section 25149): "Provides for a partial preemption of land use regulation of Class I hazardous waste disposal sites by local government. Under this partial preemption, a local jurisdiction may take action to change the conditions under which a Class I site operates only if the Department of Health Services . . . first finds, after a public hearing, that the site may present an imminent and substantial endangerment to health and the environment."

Other reports simply state that the bill "[p]rohibits cities and counties from enacting any laws relating to the operation of an existing hazardous waste facility." (See, e.g., Assem. Com. on Consumer Protection and Toxic Materials, re Sen. Bill No. 501, hearing dated June 23, 1981.)

In other parts of some of these same reports, however, the bill is described as preventing cities and counties from "prohibiting or unreasonably regulating" the disposal and treatment of toxic waste (see, e.g., Assem. Com. on Consumer Protection and Toxic Materials, *supra*); that is, the bill is described in its own terms. Similarly the legislative counsel's digest to Senate Bill No. 501 and Assembly Bill No. 650 describe the bills in their own terms; that is, as preempting ordinances which "prohibit or unreasonably regulate."

None of the legislative reports cited to us by Casmalia do more than provide a summary statement of the bill's purpose or effect; they do not provide an in-depth analysis. Significantly, none of the reports discuss what the Legislature might have meant when it preempted local ordinances which "unreasonably regulate." To hold that section 25149 prohibits all local regulation of the disposal and treatment of toxic waste prior to a DOHS hearing, would be to make the word "unreasonably" mere surplusage. ■ In construing a statute ". . . an interpretation which would render terms surplusage should be avoided, and every word should be given some significance, leaving no part useless or devoid of meaning." (*City and County of San Francisco* v. *Farrell* (1982) 32 Cal.3d 47, 54 [184 Cal.Rptr. 713, 648 P.2d 935].)

■ The literal construction of a section in a statute ought not to prevail if it is opposed to the intention of the Legislature apparent from the statute. (*Friends of Mammoth* v. *Board of Supervisors* (1972) 8 Cal.3d 247, 259 [104

Cal.Rptr. 761, 502 P.2d 1049].) Neither should the literal construction of a statement taken from a legislative committee report prevail if it is opposed to the intention of the Legislature apparent from the statute. ▆▆ In the instant case what is apparent from a reading of the statute and the entire article in which the statute is contained is that the Legislature's primary concern was the closure of toxic waste facilities (see §§ 25146 and 25146.5) and that the Legislature did not intend to preempt reasonable local regulation which does not prohibit the disposal and treatment of toxic waste.

In summary the most reasonable construction of section 25149, which gives effect and meaning to all of its words, and which is consistent with the legislative intent apparent from the statute as a whole, is that reasonable local regulation of the disposal and treatment of toxic waste not amounting to a prohibition is not preempted by the state even in the absence of DOHS findings.

(b) *Whether Government Code section 66796.11 expressly preempts local regulation.*

Government Code section 66796.11 provides: "For those facilities which accept only hazardous wastes and to which the provisions of Chapter 6.5 (commencing with Section 25100) of Division 20 of the Health and Safety Code apply, the State Solid Waste Management Board shall have no enforcement or regulatory authority. Except as otherwise provided in Section 66732, all enforcement activities for such facilities relative to the control of hazardous wastes shall be performed by the department pursuant to the provisions of Article 8 (commencing with Section 25180) of Chapter 6.5 of Division 20 of the Health and Safety Code."

▆▆ The purpose of this code section is to clarify which state agency has jurisdiction over hazardous waste facilities. It makes it clear that DOHS, rather than the Solid Waste Management Board, has jurisdiction over facilities which accept only hazardous waste. It does not preempt local regulatory control.

(2) *Implied Preemption*

▆ We must next determine whether local regulation has been preempted by implication. "The test is whether state law is so formulated as to indicate an intent to preclude local regulation, i.e., whether state law fully or partially covers the subject matter of the ordinance such that no local regulation can be tolerated." (*Cohen* v. *Board of Supervisors* (1985) 40 Cal.3d 277, 295 [219 Cal.Rptr. 467, 707 P.2d 840].)

 Casmalia argues that sections 25149, 25150,[2] 25180[3] and Government Code section 66796.11 so fully occupy the area covered by the ordinance that no local regulation can be tolerated. We disagree. The language of section 25149 indicates that reasonable local regulation will be tolerated. Where, as here, the a reasonable construction of a statute is that the Legislature intended to permit local regulation, no implied preemption will be found. As our Supreme Court stated in *People* ex rel. Deukmejian v. *County of Mendocino* (1984) 36 Cal.3d 476, 485 [204 Cal.Rptr. 897, 683 P.2d 1150]: "Preemption by implication of legislative intent may not be found when the Legislature has expressed its intent to permit local regulations. Similarly, it should not be found when the statutory scheme recognizes local regulations."

(B) *Whether the County Ordinance Is Unreasonable on Its Face*

 Casmalia's challenge to the ordinance is that it is unreasonable on its face. It does not challenge in this proceeding the reasonableness of the particular program created by the county health officer.

Casmalia contends that the ordinance is unreasonable in that: it uprooted over two years of interagency efforts on air and groundwater monitoring systems, it would have an adverse impact on groundwater monitoring plans, it would neither protect health nor the environment, and it would result in a diversion of resources and delay proper state sanctioned improvements.

Although the particular program devised by the county health officer may have some or all of these effects, we do not find that it is reasonably probable Casmalia can show that the ordinance is unreasonable on its face. The ordinance requires that Casmalia comply with a monitoring program created by the county health officer. That program may have a minimal effect on Casmalia's operations or it may have a significant effect. As we have stated, that question is not before us. We find nothing on the face of the ordinance which would lead us to conclude that it will have the deleterious effects feared by Casmalia.

---

[2] Section 25150 provides in pertinent part: "(a). . . [T]he department [DOHS] shall adopt and revise when appropriate, standards and regulations for the handling, processing, use, storage, and disposal of hazardous wastes to protect against hazards to the public health, to domestic livestock, to wildlife, or to the environment. [¶] (b) The department shall apply the standards and regulations adopted pursuant to subdivision (a) to the use and operation of facilities for handling, treating, storing and disposing of hazardous waste . . . ."

[3] Section 25180 provides in pertinent part: "(a) The standards and regulations adopted by the department pursuant to Section 25150 shall be enforced by the department or any local health officer or any local public officer as designated by the director."

Casmalia argues that the ordinance is unreasonable because it allows the county health officer—without limitation and at any time—to alter the monitoring programs. We disagree. Section 18-54 of the ordinance allows a change in the monitoring program only when "significant new information become[s] available" or upon application by Casmalia, and then only after notice and a hearing.

Casmalia argues that the ordinance is unreasonable in that it requires Casmalia to allow the county to have access to all of its facilities and to any information it has and to cooperate with an ecological monitoring study; it places no limitation on the county's ability to so inspect or on the cost of compliance.

We disagree. There is nothing on the face of the ordinance which requires this. However, should the monitoring program as devised by the county health officer be so onerous as to prevent the disposal or treatment of toxic waste, or cost so much as to leave no margin for a reasonable profit, then the program may be held to be unreasonable. This question is not now before us.

Finally, Casmalia argues that "[t]he enactment of the ordinance is precisely the kind of reflexive, provincial regulation which section 25149 seeks so assiduously to eliminate." Again we disagree. On its face the ordinance does not prevent the disposal or treatment of any toxic waste. It requires that Casmalia comply with a monitoring program to determine whether the Class I facility is a source of water or air pollution. We do not find this unreasonable, especially in light of the statement by the director of DOHS that the lack of evidence of off-site migration of hazardous waste ". . . does not mean that off-site migration is not occurring, only that it has not been detected in the existing monitoring system at the site."

## II.

We now turn our attention to the second factor: whether the court erred in determining that the harm likely to be suffered by the plaintiff in denying the preliminary injunction is less than the harm likely to be suffered by the defendant were the injunction issued.

The burden is on the plaintiff to show that it would be harmed if the preliminary injunction were not granted. (See *Pearson v. Baldwin* (1954) 125 Cal.App.2d 670, 673 [270 P.2d 866].)

Here the only evidence that Casmalia would be harmed by complying with the ordinance is an affidavit executed by Harold A. Tuchfeld of

Woodward-Clyde Consultants. According to the affidavit Woodward-Clyde provides consulting services in engineering, hydrogeology and environmental science to Casmalia. Tuchfeld declared that "[t]he preliminary cost estimates [for complying with the monitoring program] vary depending on the interpretation of the program requirements and can be as high as $9,400,000 for the first year."

The affidavit gives no support for the claim that compliance could cost as much as $9.4 million. Further the affidavit does not purport to give Casmalia's best estimate of the cost, nor does it give an estimate of how little compliance might cost.

Speaking of the estimate, the trial court stated that there is ". . . this rather startling unsupported opinion that under one interpretation it could cost nine million dollars or nine plus million dollars and with nothing to substantiate that. I don't give any credence to that kind of remark without support. It doesn't make sense to me."

Apparently the trial court found that Casmalia presented no credible evidence as to how much compliance would cost. In the absence of a showing that Casmalia would sustain some damages, we cannot find that the trial court abused its discretion in refusing to issue an injunction. (See *Pearson* v. *Baldwin, supra,* 125 Cal.App.2d 670.)

Casmalia's argument that the $9.4 million estimate is uncontroverted is without merit because the county need not controvert evidence which the court did not find credible.

Casmalia contends that if it is required to comply with the ordinance pending a trial on the merits, it will lose the benefit of a final judgment in its favor because it will already have done everything required of it by the ordinance. It argues that under such circumstances, the trial court erred in refusing to grant a preliminary injunction. (Citing *Porter* v. *Jennings* (1891) 89 Cal. 440 [270 P.2d 866]; *French Art Cleaners* v. *St. Bd. etc. Cleaners* (1949) 91 Cal.App.2d 890 [206 P.2d 25].) This argument is without merit. The trial court found that based on the evidence before it, it could not conclude compliance with the ordinance would result in irreparable injury to Casmalia. Because all intendments and presumptions favor the trial court's order (*Kunzler* v. *Karde* (1980) 109 Cal.App.3d 683, 688 [167 Cal.Rptr. 425]), we must assume that Casmalia failed to convince the trial judge that immediate compliance would deprive it of the benefit of a final judgment in its favor.

Moreover, even if Casmalia had proved that immediate compliance would deprive it of the benefit of final judgment in its favor, that would not alone require the trial court to issue a preliminary injunction. Casmalia would still have the burden of showing that the harm caused to it by the possibility of being deprived of the benefit of a final judgment outweighs the harm caused to the county by being deprived of the immediate effect of its ordinance. Because Casmalia's only evidence of harm—the statement that compliance could cost as much as $9.4 million—was rejected by the trial court Casmalia has failed to carry this burden.[4]

## DISPOSITION

The order of the trial court denying the preliminary injunction is affirmed, and our temporary stay order of July 27, 1987 is dissolved.

Stone, P. J., and Gilbert, J., concurred.

Appellant's petition for review by the Supreme Court was denied December 16, 1987.

---

[4]Because the trial court found that Casmalia did not carry its burden of proving irreparable injury we need not determine whether, under the holding of *IT Corp.* v. *County of Imperial, supra,* 25 Cal.3d at page 72, there is a presumption that the public will be harmed by the grant of a preliminary injunction to enjoin the enforcement of an ordinance.