[No. B026325. Second Dist., Div. Four. June 23, 1988.]

KENNETH W. KIZER, as Director, etc., Plaintiff and Appellant, v. ROBERT H. SULNICK, Defendant and Respondent.

434

## Counsel

John K. Van de Kamp, Attorney General, Theodora Berger, Assistant Attorney General, and Donald A. Robinson, Deputy Attorney General, for Plaintiff and Appellant.

Robert H. Sulnick, in pro. per., Toxey Hall Smith, Richard Brenneman, Victor Jacobovitz and Stanley Y. Lew for Defendant and Respondent.

## Opinion

GEORGE, J.— ■ The Director of the Department of Health Services appeals from the denial of his petition to compel production of documents pursuant to administrative subpoena. (Gov. Code, §§ 11186-11188.)[1] The subpoena was issued in connection with an investigation of possible health hazards posed by the Casmalia Resources Class I Hazardous Waste Facility.[2] It ordered an attorney representing a group of Casmalia residents in a civil action against the waste facility to produce a copy of a medical study of the health effects on persons living near the facility, which study had been commissioned by the attorney's law firm. ■■■■ The superior court ruled the health effects study was protected by the physician-patient privilege, the "attorney work product privilege,"[3] and the right to privacy.

Appellant contends that the physician-patient privilege was waived because the filing of the suit against the waste facility put in issue the resi-

[1] The order is appealable as a final judgment in a special proceeding. (*Tom* v. *Schoolhouse Coins, Inc.* (1987) 191 Cal.App.3d 827, 828-829, fn. 1 [236 Cal.Rptr. 541].)

[2] We note that this waste facility was recently the subject of a published opinion by another division of this court in *Casmalia Resources, Ltd.* v. *County of Santa Barbara* (1987) 195 Cal.App.3d 827 [240 Cal.Rptr. 903].

[3] Although the protection afforded an attorney's work product frequently has been described as a "privilege" (compare *National Steel Products Co.* v. *Superior Court* (1985) 164 Cal.App.3d 476, 485 [210 Cal.Rptr. 535], and *Rumac, Inc.* v. *Bottomley* (1983) 143 Cal.App.3d 810, 815 [192 Cal.Rptr. 104], with *BP Alaska Exploration, Inc.* v. *Superior Court* (1988) 199 Cal.App.3d 1240 [245 Cal.Rptr. 682]), it is not one of the privileges enumerated in Evidence Code section 900 et seq., and both the United States and California Supreme Courts have instead described the concept as the attorney "work-product doctrine." (*Upjohn Co.* v. *United States* (1981) 449 U.S. 383, 386 [66 L.Ed.2d 584, 589, 101 S.Ct. 677]; *Shepherd* v. *Superior Court* (1976) 17 Cal.3d 107, 121 [130 Cal.Rptr. 257, 550 P.2d 161].)

dents' physical condition, and that the physician-patient privilege, the attorney work-product doctrine, and the right to privacy were waived because information concerning the results of the health study was released to a newspaper. For the reasons stated below, we reverse the order.[4]

## FACTS

Appellant, the Director of the Department of Health Services, alleged in the court below that as part of an investigation of whether the Casmalia Waste Facility presents a threat to public health, he issued an administrative subpoena duces tecum dated May 28, 1986, to respondent ordering him to appear at a public hearing on June 12, 1986, and produce: "1. Any and all medical data, test results, analyses and other records generated as part of the health study conducted by Jan Schienle, including the names of the participants. [¶] 2. Any and all conclusions or findings made or drawn as a result of the health study conducted by Jan Schienle. [¶] 3. A copy of the protocol for the health study, including but not limited to the steps taken to assure accuracy and quality control."

An article in the June 8, 1986, edition of the Los Angeles Times newspaper reported that a medical study of 167 Casmalia residents found "abnormally high occurrences of respiratory and central nervous system problems and elevated white blood cell counts . . . ." The study was paid for by "attorneys representing Casmalia residents" in a suit against the Casmalia Resources Hazardous Waste Facility and reportedly "was conducted by toxicologist Jan Schienle of California State University, Northridge, and four physicians." Attorney Robert Sulnick, respondent in this appeal, was quoted as blaming the health problems on the presence of the waste facility.

Respondent sent word that he was unable to appear at the June 12 hearing for medical reasons. Dr. Daniel Du Coffe did appear pursuant to subpoena, stated he was one of the doctors who worked on the health study and, while stating the study was not yet complete, briefly described it and summarized its findings.

A second subpoena dated September 11, 1986, was issued ordering respondent to produce the same information concerning the health study by delivering it to the Los Angeles office of the Department of Health Services

---

[4] In a letter received by the court shortly before argument, respondent suggests this case may be moot because the Casmalia residents have filed suit against the State of California (Adams et al. v. State of California et al. (Super. Ct. Santa Barbara County, 1988, No. SM 56532)) and thus appellant may be able to obtain the health effects study through discovery in that suit. While we do not agree that this would render the present appeal moot, at oral argument we deferred submission of the case 30 days to May 19, 1988, in order to allow the parties an opportunity to reach a settlement. The parties having failed to reach such an agreement, we issue our opinion.

within 10 days. Respondent replied by letter that he would not comply, raising "the physician/patient privilege of confidentiality; the attorney/client privilege; and the attorney work product privilege."

On December 11, 1986, appellant filed a petition in superior court to compel compliance with the subpoenas. The court issued an order to show cause, and respondent filed written opposition which confirmed that respondent was one of four attorneys representing residents of Casmalia[5] who had retained "medical consultants to develop medical records and data regarding the residents of Casmalia." Respondent argued the resulting data was protected by the right to privacy, the physician-patient privilege, and the attorney work-product doctrine. Conspicuous by its absence was an assertion of the attorney-client privilege.[6]

The superior court denied the petition on the basis of the physician-patient privilege, the attorney work-product doctrine, and the right of privacy.

DISCUSSION

I

THE ADMINISTRATIVE SUBPOENA POWER

The Department of Health Services controls the issuance of permits to operate hazardous waste disposal facilities. (Health & Saf. Code, § 25200.) Local regulation of such facilities is prohibited unless "after public notice and hearing, the director [of the Department of Health Services] determines that the operation of the facility may present an imminent and substantial endangerment to health and the environment." (Health & Saf. Code, § 25149, subd. (a).) Appellant, as the Director of the Department of Health Services, has the power to conduct investigations concerning all matters within the jurisdiction of the department. (Gov. Code, § 11180; Health & Saf. Code, § 102.) In connection with such investigations, appellant is empowered to "Issue subpoenas for the attendance of witnesses and the production of papers, books, accounts, [and] documents . . . ." (Gov. Code, § 11181, subd. (e).) **(3)** Compliance with such an administrative subpoena can be secured by petitioning the superior court for an order compelling production of the material. (Gov. Code, §§ 11186-11188; *Brovelli* v. *Superior Court* (1961) 56 Cal.2d 524, 528-529 [15 Cal.Rptr. 630, 364 P.2d 462].)

---

[5] Adams v. Hunter (Super. Ct. Santa Barbara County, 1986, No. SM 47874.)

[6] Respondent's opposition papers do make passing reference to assertions of attorney-client privilege *made to the Department of Health Services* in response to the subpoenas. Declarations of a number of respondent's clients who participated in the study also state that they "do not consent to a waiver of . . . the attorney-client privilege." *But no arguments on this ground were made to the superior court.*

II

## THE RIGHT TO PRIVACY

■ The court below expressly relied on the decision in *Board of Medical Quality Assurance* v. *Gherardini* (1979) 93 Cal.App.3d 669 [156 Cal.Rptr. 55], which held that an administrative subpoena for hospital records violated the patient's right to privacy. (Cal. Const., art. I, § 1.) That case reviewed an administrative subpoena duces tecum for the hospital records of five named patients in connection with an investigation of the competence of a physician. The declaration in support of the subpoena did not state that any allegations of improper conduct involving treatment of the named patients had been made. The Court of Appeal recognized that "an individual's right to privacy is not an absolute right . . . [and] the State of California has a most legitimate interest in the quality of health and medical care received by its citizens . . . [and] therefore, under some circumstances disclosure may permissably [*sic*] be compelled." (*Id.* at p. 679.) The subpoena in *Gherardini* was found defective, however, because the supporting declaration made "no showing of relevance or materiality of the medical records of these five specified patients to the general charge of gross negligence and/or incompetence of the licensee-doctor." (*Id.* at p. 681.)

The decision in *Gherardini* does not support the lower court's order in this case. The health study sought by the subpoena in the present case is clearly material and relevant to the department's investigation of the Casmalia Facility. Dr. Du Coffe testified the study revealed health effects exhibited by Casmalia residents which are "statistically significant" and might lead to diseases such as leukemia and multiple sclerosis. This is precisely the type of information the department's investigation is seeking.

It is also significant that *Gherardini* involved a demand for individually identifiable medical records. In contrast, *Board of Medical Quality Assurance* v. *Hazel Hawkins Memorial Hospital* (1982) 135 Cal.App.3d 561 [185 Cal.Rptr. 405] arose from a demand for the medical records of four *unnamed* patients. In that case the court held that the right of privacy discussed in *Gherardini* did not apply "because neither disclosure of the patients' identities nor disclosure of identifying medical information was requested." (*Id.* at p. 565.)[7] In the present case, the court below was not given a detailed description of the contents of the health study. Therefore, the

---

[7] By analogy, we note that the Confidentiality of Medical Information Act (Civ. Code, § 56 et seq.), which does not apply to the present case, also makes this distinction by limiting the definition of protected medical information to "individually identifiable information." (Civ. Code, § 56.05, subd. (b).) In fact, the statute expressly permits disclosure of medical information "for bona fide research purposes" provided such information is not further disclosed "in any way which would permit identification of the patient." (Civ. Code, § 56.10, subd. (c)(7).)

record does not disclose whether the study refers to individually identifiable medical records. If such records are part of the study, the right to privacy would justify, at most, either the deletion of any named medical records upon the remainder of the health study being produced or, if feasible, the deletion of information which individually identifies the participants. The right to privacy does not support a blanket denial of appellant's petition to compel production of the entire health study on the record before this court.[8]

## III

### THE PHYSICIAN-PATIENT PRIVILEGE

The physician-patient privilege arises when a person "consults a physician or submits to an examination by a physician for the purpose of securing a diagnosis or preventive, palliative, or curative treatment . . . ." (Evid. Code, § 991.) ■ The party asserting a privilege has the burden of proof regarding the existence of the privilege. (*National Steel Products Co.* v. *Superior Court, supra,* 164 Cal.App.3d 476, 483; *Mize* v. *Atchison, T. & S. F. Ry. Co.* (1975) 46 Cal.App.3d 436, 447 [120 Cal.Rptr. 787].) ■ While the exceedingly brief description of the health effects study in the record before us suggests that participation by the Casmalia residents might constitute consultation with a physician, there is no evidence that the purpose of this communication was to obtain a diagnosis of the subjects' condition. It appears more likely that the purpose was to determine whether a statistically significant portion of the residents of Casmalia shared similar medical complaints in order to determine whether the presence of the waste facility was the cause of these symptoms. Participation in such a group study does not invoke the same considerations of confidentiality as an individual's communication with his or her doctor. The record on appeal does not support a finding that respondent sustained his burden of proof that the physician-patient privilege was applicable.

■ Even if the physician-patient privilege were applicable to the health effects study, in the present case this privilege was unavailable to those participants who were also plaintiffs in the suit against the waste facility, because the pursuit of a claim seeking damages for personal injury allegedly caused by the presence of the facility is inconsistent with a reasonable expectation of privacy on the part of such individuals in matters relating to their medical condition. ■ "The whole purpose of the privilege is to preclude the humiliation of the patient that might follow disclosure of his

---

[8] The subpoena does ask for the names of the subjects of the study, but this is not necessarily equivalent to a request for identified medical records because a separate list of names could be provided, if relevant.

ailments. When the patient himself discloses those ailments by bringing an action in which they are in issue, there is no longer any reason for the privilege." (*City & County of S. F.* v. *Superior Court* (1951) 37 Cal.2d 227, 232 [231 P.2d 26, 25 A.L.R.2d 1418]; *Rudnick* v. *Superior Court* (1974) 11 Cal.3d 924, 933, fn. 13 [114 Cal.Rptr. 603, 523 P.2d 643].) ■ In the present case, the record before us establishes that 89 of the participants in the study are also plaintiffs in the suit against the facility. There is no evidence concerning whether the remaining participants, if any, are also plaintiffs. The record on appeal, therefore, does not provide a basis for concluding that the physician-patient privilege is applicable.

## IV

### ATTORNEY WORK-PRODUCT DOCTRINE[9]

At the time of the ruling in the present case, the attorney work-product doctrine was set forth in Code of Civil Procedure section 2016, subdivision (b): [10] "The work product of an attorney shall not be discoverable unless the court determines that denial of discovery will unfairly prejudice the party seeking discovery in preparing his claim or defense or will result in an injustice, and any writing that reflects an attorney's impressions, conclusions, opinions, or legal research or theories shall not be discoverable under any circumstances." (Stats. 1984, ch. 1127, § 1, pp. 3803-3804.) ■ Although the statute by its terms applies only to discovery in civil cases, the work-product doctrine has been extended to apply to testimony at trial in civil cases (*Rodriguez* v. *McDonnell Douglas Corp.* (1978) 87 Cal.App.3d 626, 648 [151 Cal.Rptr. 399], contra *Mize* v. *Atchison, T. & S. F. Ry. Co.*, *supra,* 46 Cal.App.3d at pp. 448-449) as well as criminal cases. (*People* v. *Collie* (1981) 30 Cal.3d 43, 59 [177 Cal.Rptr. 458, 634 P.2d 534, 23 A.L.R.4th 776].) The doctrine protects work prepared for a completed case from discovery in subsequent litigation (*Fellows* v. *Superior Court* (1980) 108 Cal.App.3d 55, 62 [166 Cal.Rptr. 274]) and applies even if the attorney was working in a nonadversarial context. (*Rumac, Inc.* v. *Bottomley, supra,* 143 Cal.App.3d 810, 816.)

■ While an attorney's "impressions and conclusions" are given "absolute protection," the doctrine " 'affords a conditional or qualified protection for work product generally . . . .' " (*Rumac, Inc.* v. *Bottomley, supra,* 143 Cal.App.3d at p. 815.) Reports of medical experts qualify for this conditional protection; therefore, disclosure will be ordered upon a showing of good cause. (*National Steel Products Co.* v. *Superior Court, supra,* 164

---

[9] We do not consider whether the attorney-client privilege applies since that issue was not argued either in this court or in the court below.

[10] The work-product doctrine is now codified in Code of Civil Procedure section 2018.

Cal.App.3d at p. 487; *Sanders* v. *Superior Court* (1973) 34 Cal.App.3d 270, 279-280 [109 Cal.Rptr. 770].)[11] The determination of good cause contemplates a balancing of the need for disclosure against the purpose served by the work-product doctrine. (*National Steel Products Co.* v. *Superior Court, supra,* 164 Cal.App.3d at p. 490.)

■ The work-product doctrine is designed "(i) to preserve the rights of attorneys to prepare cases for trial with that degree of privacy necessary to encourage them to prepare their cases thoroughly and to investigate not only the favorable but the unfavorable aspects of such cases and (ii) to prevent an attorney from taking undue advantage of his adversary's industry or efforts." (Former Code Civ. Proc., § 2016, subd. (h); now see Code Civ. Proc., § 2018, subd. (a).) This rationale for the work-product doctrine would not be served by its application in the present case. Respondent attorney's right to prepare his case for trial "with . . . privacy" (§ 2016, subd. (h)) is protected by Government Code section 11183, which prohibits appellant, as a state officer, from disclosing the contents of the health study except under limited circumstances. Therefore, the additional purpose of the work-product doctrine set forth in section 2016, subdivision (h), to prevent the attorney's adversary from taking undue advantage, becomes irrelevant in the present context. Appellant is not a party to the lawsuit and is barred by statute from providing the information sought to respondent's adversary. Although respondent contends his opponents in the lawsuit may gain access to the health study if it is released to appellant, there is no evidence in the record to substantiate this fear.

On the other hand, the need for disclosure is significant. Appellant cannot fulfill his statutory duty to investigate the possible health hazards posed by the waste facility without access to all relevant information. Additionally, a "compelling reason for permitting discovery is the inability to obtain an adequate substitute for that which is sought by discovery." (*National Steel Products Co.* v. *Superior Court, supra,* 164 Cal.App.3d at p. 491.) The county health officer for Santa Barbara County testified he was unable to conduct his own health study because many of the residents of Casmalia would not participate.[12]

The record on appeal does not contain sufficient evidence to support the conclusion of the court below that the attorney work-product doctrine precluded disclosure of the health study.

---

[11] The work-product doctrine does not apply if it is "reasonably certain" the expert will testify at trial concerning the material subject to disclosure. (*Sanders* v. *Superior Court, supra,* 34 Cal.App.3d at p. 277.)

[12] The declarations of the Casmalia residents deny the claim made by the county health officer that the residents were advised by their attorneys not to cooperate with the government in a health study. The declarations do not deny, however, that many of the residents did refuse to participate in such a study. The declarations further confirm that there exists in the geographical area "a deep and wide spread [*sic*] feeling of distrust" of government health officials, and that the residents believe that the "State is our opponent . . . ."

Since we conclude the right of privacy, the physician-patient privilege, and the attorney work-product doctrine do not prevent disclosure of the health study pursuant to an administrative subpoena, we need not reach appellant's contention that respondent waived these protections by participating in the "press conference" announcing the results of the study. We do not address the issue of the attorney-client privilege because, as we have noted, that issue was not argued to the court below or to us.

## DISPOSITION

The order denying the petition to compel production of documents pursuant to administrative subpoena is reversed. Each party shall bear his own costs on appeal.

Goertzen, J., concurred.

**WOODS, P. J.**—I respectfully dissent.

I would affirm the trial court on the ground that compelled disclosure of the medical records in question violates the Casmalia residents' right to privacy.

The majority finds no support for this privacy argument. According to the majority, "the record does not disclose whether the study refers to individually identifiable medical records." As I read the record, the study is based on medical records which will necessarily be individually identifiable.

The subpoena states that respondent possesses "test results, *medical records,* analyses and other documents" which are pertinent to the department's investigation of the Casmalia site, based on the health study of Casmalia residents. Among the specifically requested items are "[a]ny and all medical data, test results, analyses and other records generated as part of the health study conducted by Jan Schienle, *including the names of the participants.*" (Italics added.)

Both the June 8, 1986, Los Angeles Times article referred to in the majority opinion, and the testimony of Dr. Du Coffe at the June 12 hearing, show that the basis of the study was (1) a questionnaire to Casmalia residents regarding their medical symptoms, (2) a physical examination, and (3) routine lab tests. Some of the residents also had full toxic screenings and pulmonary function tests. There is no reason to believe that each person's medical records are not identified by that person's name and other personal data, just as any other medical records would be. Since compelled compliance with the subpoena would reveal the identities and medical conditions of those individuals, I would affirm the trial court in upholding their right to privacy.

Although the constitutional right to privacy is not absolute, incursions into individual privacy must be justified by a showing of a compelling interest. (*White v. Davis* (1975) 13 Cal.3d 757, 775 [120 Cal.Rptr. 94, 533 P.2d 222].) Disclosure may be appropriate where it is "narrowly limited to information directly relevant to the issues . . . and when good cause and materiality to the action establish that the need for disclosure outweighs the right to privacy. [Citation.]" (*Cutter v. Brownbridge* (1986) 183 Cal.App.3d 836, 843 [228 Cal.Rptr. 545], citing *In re Lifschutz* (1970) 2 Cal.3d 415, 435 [85 Cal.Rptr. 829, 467 P.2d 557, 44 A.L.R.3d 1], and *Board of Medical Quality Assurance v. Gherardini* (1979) 93 Cal.App.3d 669, 679 [156 Cal.Rptr. 55].)

In *Board of Medical Quality Assurance v. Gherardini, supra,* 93 Cal.App.3d 669, the court held that the constitutional right to privacy safeguards an individual's medical records from government data gathering, absent a showing of waiver or good cause. Protecting the patient's privacy precludes the humiliation that might arise from disclosure of the patient's ailments, and encourages the patient to fully disclose to the physician all the information necessary for effective diagnosis and treatment. "The state of a person's gastro-intestinal tract is as much entitled to privacy from unauthorized public or bureaucratic snooping as is that person's bank account, the contents of his library or his membership in the NAACP." (*Id.,* at p. 679.)

*Gherardini* involved an attempt by the Board of Medical Quality Assurance to compel production of hospital records and documents pertaining to five named patients. The declaration in support of the subpoena indicated that the records might contain evidence to substantiate an allegation that a named doctor was negligent or incompetent. *Gherardini* found that the subpoena failed to establish good cause for invading the patients' privacy rights, as there were no facts to show how the medical records of the five specified patients were relevant to the general charges against the doctor.

In contrast, the court in *Board of Medical Quality Assurance v. Hazel Hawkins Memorial Hospital* (1982) 135 Cal.App.3d 561, 565 [185 Cal.Rptr. 405], found no infringement of the right to privacy in compelled disclosure of patients' hospital charts, as neither the patients' identities nor identifying medical information would be disclosed.

Here, unlike *Gherardini,* the records are relevant to the problem under investigation, health hazards caused by the Casmalia facility. However, unlike *Hazel Hawkins,* it appears that the records will result in disclosure of the patients' identities. Indeed, the subpoena specifically asks for the subjects' names. The question is whether good cause has been shown for that infringement of the patient's privacy rights.

I believe that the state has demonstrated a need for the medical data contained in the records, due to the Casmalia residents' hostility to a government health study. Even though that hostility arises from the state's past inaction, the fact remains that the state claims it is now attempting to act to protect the residents of Casmalia, and should have the benefit of pertinent information regarding abnormal medical symptoms. While as a general rule the state has no automatic right to the medical records of anyone who sues a toxic waste facility, this case represents a special situation because the state's long-term refusal to act has created a hostile environment in which the residents now refuse to cooperate in a state-sponsored health study.

No showing has been made, however, that the need for the medical data necessitates disclosure of the identities of the individual patients. The state can analyze whether the records show that a sizeable group of people are experiencing abnormal health problems in the Casmalia area, without knowing the identity of the persons involved in the study.

I further believe that no showing has been made that the individual patients waived their right to privacy. The June 8, 1986, Los Angeles Times article shows that the preliminary findings from the study were summarized and released to the press by respondent, the plaintiff residents' attorney. There has been no release of the condition or identity of any specific patient.

Because neither good cause nor waiver have been established, I would affirm the trial court on the ground that compelled disclosure of these records violates the resident plaintiffs' right to privacy.

I also have problems with the majority's analysis of the physician-patient privilege.

Eighty-nine Casmalia residents who are plaintiffs in the action against the facility declared below that they had unsuccessfully sought help from the state and county for years. Their complaints were ridiculed, and their requests for a publicly sponsored health study were ignored. They believe that the government did not become interested in their plight until problems with the facility reached the nearby, more affluent community of Santa Maria. The medical study in question was conducted at the initiative of their attorney to document their health problems and develop medical profiles for use in their litigation against the facility after the state had refused to act. The residents do not want these records released to the state, which they now perceive as their enemy and the ally of the facility's owners.

The resident plaintiffs' perception of the state may arise in part from the dual role of the Department of Health Services in the area of toxic waste disposal. While the Legislature has announced its concern with the threats to public health and the environment caused by improper disposal of haz-

ardous waste (Health & Saf. Code, § 25100), it has also declared it a matter of urgent public necessity that "existing hazardous waste facilities be retained to the extent feasible," based on the need for such facilities and the decreasing number of them. (Health & Saf. Code, § 25146.5.) This dual objective of the state officials demonstrates, at least, some conflict with the concerns of the Casmalia residents.

The majority opinion states that participation in the group study "does not invoke the same considerations of confidentiality as an individual's communication with his or her doctor." This conclusion seems to be based on the assumption that diagnosis was not a component of these consultations. This assumption may not be justified. The fact that these consultations and testing were arranged by an attorney for the purpose of litigation does not negate the probability that they also served a diagnostic purpose. Although some of these patients were aware of, and had complained of, respiratory difficulty, headaches, nausea, or eye irritation, there is no evidence that these complaints had been medically diagnosed or that the patients had any knowledge of such medical findings as the elevated white blood cell counts that the majority opinion reflects were disclosed by these examinations. I cannot conclude as the majority does that the physician-patient privilege does not apply.

The determinative question then is whether the privilege was unavailable because the plaintiffs had put their physical conditions in issue. On this point, there seems some confusion in the discussion in the majority opinion between the pending litigation of the plaintiff residents against the waste facility and the instant investigatory proceeding by the state.

There is no physician-patient privilege "concerning the condition of the patient if such issue has been tendered by . . . [t]he patient . . . ." (Evid. Code, § 996; 2 Jefferson, Cal. Evidence Benchbook, § 37.2, p. 1366.) It is clear that the resident plaintiffs cannot invoke the privilege to preclude disclosure of the medical study in their action against the waste facility, since they tendered the issue of their condition by bringing the action. (*City & County of S. F.* v. *Superior Court* (1951) 37 Cal.2d 227, 232 [231 P.2d 26, 25 A.L.R.2d 1418]; *Britt* v. *Superior Court* (1978) 20 Cal.3d 844, 862-864 [143 Cal.Rptr. 695, 574 P.2d 766]; 2 Witkin, Cal. Evidence (3d ed. 1986) Witnesses, § 1195.) It is not equally clear that the privilege is unavailable in the instant investigatory proceeding by the state. Eighty-nine of the Casmalia residents admit making repeated complaints to state officials regarding their medical problems. Their action in complaining to the state and requesting a health study, which was refused by the state, cannot be said to constitute a waiver of the privilege as to medical records which did not exist at that time and medical conditions not then known. I therefore conclude the privilege was not waived.

The physician-patient privilege is, however, an aspect of the patient's constitutional right to privacy. (*See People* v. *Stritzinger* (1983) 34 Cal.3d 505, 511 [194 Cal.Rptr. 431, 668 P.2d 738]; *In re Lifschutz, supra,* 2 Cal.3d at pp. 431-432.) As discussed, *ante,* the state has demonstrated a compelling interest in this medical data, although not in the identities of the patients.

Finally, I must also disagree with the majority's analysis of the attorney work-product doctrine.

The majority opinion concludes that, due to Government Code section 11183, there is no risk that respondent's opponent in the law suit, the Casmalia facility, will gain access to this study. That section, however, expressly permits disclosure of information acquired through a state investigation when a state officer is "called upon to testify in any court or proceeding at law." There is therefore a substantial risk that the results of the study will become available to the facility if the state pursues legal action against the facility based on the information disclosed by the study.

The question then is whether this risk is outweighed by the demonstrated need for disclosure due to the Casmalia residents' refusal to cooperate with a state-sponsored health study. Again, I believe a showing has been made to justify disclosure of the medical records themselves, but not the names of the individual patients, based on privacy considerations.

It was the duty of the trial court to determine whether the administrative subpoena, as drafted, conformed to legal and constitutional standards. (*Fielder* v. *Berkeley Properties Co.* (1972) 23 Cal.App.3d 30, 39 [99 Cal.Rptr. 791].) Since I agree with the trial court that the subpoena contravened those standards, I would affirm.